**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TODD FARBER, *et al.*                    *

        Plaintiffs                    *

        v.                    *                    Civil Action No.:DKC-11-CV-1580

DOUGLAS PAUL BEVERIDGE, *et al.*         *

        Defendants                    *

    *    *    *    *    *    *

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO EXCLUDE DEFENSE EXPERT MICHAEL SPODAK, M.D.**

Plaintiffs, Todd Farber and Ivey Farber, Individually and as Parents and Guardians of L.F., a minor, by and through their attorneys, Paul D. Bekman, Katharine O. Porwick, and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., pursuant to Federal Rule of Evidence 702 and the principles outlined by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) respectfully request that this court order that Michael Spodak, M.D. be precluded from testifying as an expert in this proceeding and in support thereof state as follows:

**I.      SUMMARY OF THE ARGUMENT.**

This case involves injuries to L.F., a minor child, following an automobile collision. At the time of the collision L.F. was five years old. She is now 10 years old. By and through her parents, L.F. has filed this lawsuit and contends that after the collision she became selectively mute and suffered from increased behavioral problems. Selective mutism is a childhood disorder characterized by an inability to speak in certain settings despite speaking in other settings.

Defendants have identified one expert on causation - Michael Spodak, M.D. Plaintiffs seek to exclude Dr. Spodak as an expert on the issue of causation because he is not a child and adolescent

psychiatrist, he has no experience or training on selective mutism, he has never clinically seen a patient with selective mutism, he has not published on selective mutism, he does not lecture on selective mutism, and his collective knowledge on the subject boils down to the 8 articles he read regarding selective mutism, (three of which are print outs from websites that discuss selective mutism including a print out from a website that is a family run "information web site and online toy store." Exhibit 1, the "About Us" Section from Bright Tots Website.

Therefore, for the reasons stated herein, Plaintiffs request that the opinions and testimony of defense expert, Michael Spodak, M.D. be stricken and that he be excluded from testifying.

## II.     STATEMENT OF RELEVANT FACTS.

On May 15, 2008, L.F. was in an automobile collision, where the car in which she was a passenger was rear-ended by a tractor trailer.  Defendants have conceded liability.  The issue in this case are the extent of the damages suffered by L.F. as a result of the collision.

According to L.F.'s parents, immediately after the crash, L.F. talked incessantly about the collision and her fears associated with it.  Then within two weeks or so after the collision, they noticed that their daughter had increased behavior problems, including temper tantrums.  Shortly thereafter, they noticed that L.F. stopped talking outside of the home.  L.F. was diagnosed with selective mutism, caused by the automobile collision. L.F.'s parents, individually and as her parents, brought this suit against Defendants, the driver of the truck, Douglas Paul Beveridge, and his employer, Reinhart FoodService, L.L.C..  Defendants have agreed that Mr. Beveridge was acting within the scope of his employment at the time of the collision.

Defendants identified one expert on causation, Michael Spodak, M.D.  Dr. Spodak is a forensic psychiatrist, who has had the opportunity to meet with L.F. and her parents.  On January 10,

2013, Dr. Spodak issued a report in this case which is attached hereto as Exhibit 2.  Dr. Spodak has concluded within a reasonable degree of medical certainty that "L.F's select [sic] mutism was not causally related to, or a consequence of, the subject accident of 5/15/08."  The listed bases for his opinion are:

> - The only basis to suggest a causal connection is that the onset of selective mutism apparently followed the accident in relatively close proximity
>
> - There is no reliable principle or methodology which supports a causal connection between the onset of selective mutism and a traumatic motor vehicle accident
>
> - To my knowledge there are no articles subject to peer review that have supported any causal connection between a traumatic motor vehicle accident and the onset of selective mutism
>
> - There is no general acceptance by the relevant scientific community of a causal connection between selective mutism and a traumatic motor vehicle accident.

*Id.*

On April 23, 2013, Plaintiffs' counsel took the deposition of Dr. Spodak.  Relevant portions of his deposition are outlined below.

## III.  APPLICABLE LAW.

The Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), set forth the standard for admission of expert testimony, concluding that Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

In *Daubert*, the Court charged trial judges with the responsibility of acting as gatekeepers regarding expert testimony pursuant to two prongs: relevancy and reliability.  *Daubert*, 509 U.S. at 589. Simply stated, there must be "good grounds" for the opinion. *Id.*

### A.    Reliability.

In determining whether an opinion is reliable, involves an assessment of whether the methodology used is valid and whether these factors can be applied to the facts of the case.  *Daubert*, 509 U.S. at 592-593.  An expert may testify only if, "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  F.R.E. 702.  Ultimately, the trial court is charged with the responsibility to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

In order for a proffered expert's testimony to be reliable, there must be a "reasonable factual basis for [the expert's] testimony. *Teska v. Potlack Corp.*, 184 F.Supp.2d 913, 919 (D. Minn. 2002). Opinions that are developed only for purpose of litigation should be excluded.  Courts are generally wary of such testimony.  As the United States District Court for the District of Minnesota has explained,

> both *Daubert* and *Kumho* make it clear that the day of the expert, who merely opines, and does so on basis of vague notions of experience, is over.  Experts are now held

4

to a level of accountability that requires factual predicates, in historical fact, or in competent evidence, which allows a factfinder to independently verify the accuracy of the expert's results.  Absent such reliable verification, the expert's opinion is not admissible.

*Solheim Farms, Inc. v. CNH America*, LLC, 503 F.Supp.2d 1146, 1150 (D.Minn. 2007).

### B.   Relevancy.

For expert evidence to be relevant, there must be a "valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Daubert*, 509 U.S. at 591-92.  "An expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data.  Talking off the cuff - deploying neither data nor analysis – is not acceptable methodology."  *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).  Expert testimony is inadmissible if it is too speculative, unsupported by the facts, or contrary to the facts.  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000); *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported . . . and an objection to its admission is appropriate.")

An expert must also explain the methodology used.  An expert may not simply parrot the conclusions of journal articles, but must employ his independent expertise.  *See Mercurio v. Nissan Motor Corp.*, 81 F. Supp.2d 859, 863 (N.D. Ohio 2000 (stating that it "would not pass muster under *Daubert*" when it appears as though the medical expert would do "little more than regurgitate the conclusions of several journal articles").  As the Eighth Circuit has stated, a witness may be "eminently qualified" to testify about one area, and yet "sorely lac[k]" the relevant experience to opine about a different area in the same field of study.  *Wheeling Pittsburgh Steel Corp. v. Beelman*

5

*River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

## IV.   ARGUMENT.

### A.   Dr. Spodak's Lacks the Necessary Qualifications to Render an Opinion in this Case.

Plaintiffs' counsel took the deposition of Dr. Spodak on April 23, 2013.  In his deposition,

Dr. Spodak freely acknowledged his lack of qualifications in this case, including:

1.   Dr. Spodak is not a board certified child and adolescent psychiatrist.  Exhibit 3, Deposition of Dr. Spodak at p. 6.

2.   Dr. Spodak is not board eligible for the child and adolescent psychiatry board.  *Id*. at p. 6.

3.   Dr. Spodak does not see any children in a clinical setting.  *Id*. at p. 10.

4.   Dr. Spodak has never seen children in a clinical setting in his private practice.  *Id*.

5.   Dr. Spodak does not treat children in a clinical setting because, he "think[s] the treatment of children is best done by child psychiatrists."  *Id*. at 11.

6.   In his forensic practice, Dr. Spodak evaluates only two or three children a year, whereas typically he evaluates two adults a week.  *Id*. at p. 17.

7.   Dr. Spodak has never clinically treated a patient with selective mutism.  *Id*. at p. 18.

8.   Dr. Spodak agreed that selective mutism is a condition that is most prevalent in children.  *Id*. at 18.

9.   Dr. Spodak has never performed a forensic evaluation regarding whether a child had selective mutism or not.  *Id*. at 19.

10.  Dr. Spodak performed research in conjunction with this case and he "attempted to

6

print out ones that focused primarily on any information related to causation or etiology." *Id*. at p. 25. Attached as Exhibit 4 is a copy of all of the articles that were printed off by Dr. Spodak.

11.    The universe of Dr. Spodak's knowledge on selective mutism consists of the articles he printed off in this case as well as the six articles he read that were cited by Plaintiff's expert, Brian Zimnitzky, M.D. *Id*. at p. 98,

12.    Dr. Spodak agreed that he does not have "extensive experience" in selective mutism. *Id*. at 106-107.

13.    Dr. Spodak has not authored or published any articles on selective mutism. *Id*. at 107.

14.    Dr. Spodak has not made any presentations in the area of selective mutism. *Id*.

Federal Courts regularly hold that experts who do not have the requisite education in the area or field in which they have given an opinion are properly excluded. *See, e.g. United States v. Crosby*, 713 F.2d 1066, 1076 (5th Cir. 1983). For instance, in *Crosby*, the Fifth Circuit affirmed the trial court's refusal to accept a counselor with a master's degree in social work as an expert in the diagnosis of post-traumatic stress disorder. *Id*. at 1076. Similarly, an expert, who has training and education as a psychiatrist, is not necessarily qualified to testify as an expert on any issue within the vast field of mental health disorders, particularly those involving children when there is a specialized form of psychiatry – child and adolescent psychiatry. *See id.* Unless he is to testify only to general psychiatric conditions, the expert must possess "some special skill, knowledge or experience" concerning the particular mental health issue in this case. *See id.*

Unlike Plaintiffs' experts, Dr. Elisa Shipon-Blum, who routinely evaluates and treats patients

7

with selective mutism, and Dr. Brian Zimnitzky, who is a board certified child and adolescent psychiatrist who has clinically treated patients with selective mutism, Dr. Spodak is a forensic psychiatrist that does not have any special training or expertise in selective mutism. He has not authored any peer-reviewed (or non peer-reviewed) publications on selective mutism. He does not teach or lecture on the topic. In fact, he has never personally diagnosed or treated a patient with selective mutism. The only experience Dr. Spodak has in the area of selective mutism is derived from what he has learned as a result of being retained as an expert in this litigation. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("Daubert II") ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.") Dr. Spodak's limited knowledge regarding selective mutism consists only of (a) the websites he considered, (b) the four journal articles that he personally printed off, and © the articles he read that were cited by Plaintiffs' expert. It must be pointed out that the websites Dr. Spodak researched are not considered authoritative sources of scientific information. For example, Dr. Spodak considered and printed off pages from the "Bright Tots" family run website maintained for the purchase of online children's toys. *See* Exhibit 1. He also considered the a page from the Selective Mutism Foundation Website Page, and a case report printed by an Emotional Wellbeing Development officer on squidoo - a community website platform. *See* articles at Exhibit 4. Certainly, Dr. Spodak was not educating himself on a condition he did not previously know about with educational and peer reviewed journals.

Although Dr. Spodak may be qualified to testify about general psychiatric issues, he is plainly

8

not qualified to testify about a mental health disorder that primarily affects children because he lacks the "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.  *See also In re Vioxx Products Liability Litigation*, 2006 WL 6624015 (Feb. 3, 2006) (excluding an expert to testify about the causative effect that Vioxx could have on the formation of a thrombus because the expert had no training on pharmacology, had not done research on the topic, had not published on the topic, but had only spent "eight hours" reviewing the medical literature and documents in the case); *Hill v. Fikes Truck Line, LLC*, 2012 WL 5258753 (October 24, 2012) (excluding an orthopaedic surgeon from offering an opinion about post traumatic stress disorder following an automobile collision); *Steele v. Armark Corporation*, 2012 WL 1067879 (March 29, 2012) (striking the causation opinions of an expert because he was not a nephrologist or toxicologist and could not offer "an opinion as to the causal relationship between toluene exposure and kidney disease"); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Circuit 2001) (upholding the trial court's exclusion of a medical expert because she knew "little-if anything - about the subject" of intramedullary nailing and stating that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."); *Adams v. Laboratory Corporation of America*, 2012 WL 370262 (Feb. 3, 2012) ("Dr. Rosenthal's background and experience does not qualify her under either Georgia law or *Daubert* to offer an opinion on causation based on what a gynecologist or oncologist should have done upon being presented with abnormal Pap smear results and what medical consequences and processes would have occurred upon that Pap smear information being communication to him, her, or them."); *Haller v. Astrazeneca Pharmaceuticals*, 598 F.Supp.2d 1271 (Feb. 6, 2009) (excluding the medical causation opinion of Dr. I Jack Abramson because his "education, training and experience simply

9

do not render him qualified to express a diabetes causation opinion in Haller's case.  Dr. Abramson has never diagnosed diabetes in a patient, does not treat an of this patients for diabetes, and admits that if he observes an elevated blood sugar in a patient he send them either to a primary care physician or specialist.  He further has no specialized training in endocrinology and, although he asserts that he could practice primary care if he wanted to, he has not held himself out as a primary care physician at any time during the last eighteen years.")

Because Dr. Spodak does not have the requisite experience, education, background or even primary understanding of the condition of selective mutism, his opinions should be excluded.

**B.    Dr. Spodak's Opinions on Causation Are Unreliable, Are Not Relevant, and Should be Excluded.**

Furthermore, Dr. Spodak's opinions do not meet the *Daubert* requirements of reliability and relevancy because he ignores facts in the case and he does not even apply the literature that he relies on.

In his deposition, Dr. Spodak made the following opinions about selective mutism and its causal relationship in this case:

1.    Dr. Spodak acknowledged that "one article" that established a causal link between selective mutism and a traumatic event was "sufficient" for him.  Exhibit 3 at p. 77.

2.    Dr. Spodak agreed that L.F. met the diagnostic criteria for selective mutism in the summer of 2008 after the automobile collision.  *Id*. at 86.

3.    Dr. Spodak agreed that L.F. had not been diagnosed with selective mutism prior to the automobile collision in May 2008 and that he "did not see evidence that she was selectively mute even without the diagnosis prior to the summer of 2008."  *Id*. at 86-

88.

4.      Dr. Spodak agreed that L.F. had anxiety prior to the automobile collision of 2008.

        *Id*. at 88.

5.      Dr. Spodak opined that there has "been no established etiology for selective mutism."

        *Id*. at 86.

Essentially, Dr. Spodak acknowledged that L.F. did not have selective mutism prior to the automobile collision.  He went on to agree that she met the diagnostic criteria for selective mutism shortly after the automobile collision.  He also acknowledged that she had a pre-existing condition of anxiety prior to the collision.  Despite these acknowledgments, Dr. Spodak was adamant that L.F.'s selective mutism could not have been caused by the automobile collision only because he felt the literature does not support that conclusion.  Dr. Spodak was just as happy to suggest that the relationship between L.F.'s selective mutism to the automobile collision was a coincidence, even though he could cite no literature in support of that opinion.  Ironically, the literature that Dr. Spodak cited in his deposition does, in fact, support the causal link between the development of selective mutism following a traumatic event.  For example in the article, *Anxiety Disorder, Social Phobia and Selective Mutism*, the authors conclude, "**The onset of selective mutism is often abrupt, occurring after a stressor** or humiliating social experience."  Bettina E. Bernstein, DO, Caroly Pataki, M.D., *Anxiety Disorder, Social Phobia and Selective Mutism*, Sept. 25, 2009 at 1 attached at  Exhibit 4 (emphasis added).  In the article, *Silent Suffering: Children with Selective Mutism*, the author identifies trauma as a potential, although not common, cause of selective mutism.[1]  She

---

        [1]  Lisa Camposano is a Fourth grade teacher at Millstone Township Elementary School and a graduate student.  The qualification of this non-health care provider call into question the reliability alone of this article.

explains:

> Early theorists argued that trauma or major life events, such as abuse or death or a loved one, trigger the onset of selective mutism.  However, according to more recent studies, children who have experience trauma are not more likely to develop selective mutism, and **early childhood trauma is rarely associated with the development of the disorder**.

Lisa Camposano, *Silent Suffering: Children with Selective Mutism*, THE PROFESSIONAL COUNSELOR, RESEARCH AND PRACTICE, Vol. 1, Issue 1, p. 47, attached at Exhibit 4 (emphasis added).  Ms. Camposano does not conclude that there is no relationship between trauma and selective mutism, just that it is not common.  This author goes onto recognize that, "Anxiety appears to be the most likely culprit at the core of this disorder."  *Id*. at 48.  In *Systematic Assessment of 50 Children with Selective Mutism*, the article recognized that previous studies found that "stressful life events preceding mutism were **not frequent**."  E. Steven Dummit, III, M.D., Rachel G. Klein, Ph.D., Nancy K. Tanger, M.D., Barbara Asche, C .S.W., Jacqueline Martin, R.N., and Janet A. Fairbanks, M.D., *Systematic Assessment of 50 Children with Selective Mutism*, J. AM. ACAD. CHILD. ADOLSEC. PSYCHIATRY, 36:5, May 1997 at 658, attached at Exhibit 4 (emphasis added).  The article, *Two Sets of Twins with Selective Mutism: Neuropsychological Findings*, explains trauma as an basis for selective mutism as follows:

> reaction to major life events or trauma has also been proposed as a potential causative factor, but major reviews of children with SM indicate that while psychosocial stressors may be associated, abuse and **trauma are only rarely associated factors in the development of the disorder**.

Robert M. Gray, Catherine M. Jordan, Richard S. Ziegler, Ronald B. Livingston, *Two Sets of Twins with Selective Mutism: Neuropsychological Findings*, CHILD NEUROPSYCHOLOGY, 8:1, p.42, attached at Exhibit 4 (emphasis).  Again, this article concludes that trauma is not a common

causative factor for selective mutism, but it acknowledges that it can be a cause, nevertheless.

None of the articles cited by Dr. Spodak support his opinion that there is "no established etiology or cause for selective mutism." Exhibit 3 at p. 22. In fact, every article cited by Dr. Spodak concluded that selective mutism could be caused by trauma, even if it was a rare occasion. Furthermore, the articles recognize that a child (like L.F.) with a pre-existing condition of anxiety is more likely to develop selective mutism. Dr. Spodak's failure to appreciate the facts in this case about L.F.'s pre-existing anxiety which makes her more likely to develop the disorder, demonstrates that Dr. Spodak's opinions do not contain the necessary "reasonable factual basis" but were formed only for purposes of litigation. *See Teska*, 184 F.Supp.2d at 919; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000). Dr. Spodak's opinions in this case are only consistent with one theory – the defense theory that there is no causal relationship. This association does not meet the requirements of *Daubert*.

It is plain that in this case, Dr. Spodak has not demonstrated an "application of his independent expertise" but is simply parroting journal articles, and he is not even doing that accurately. Dr. Spodak should be excluded as his opinions are neither reliable nor relevant and do not meet the requirements of *Daubert*.

## V.    CONCLUSION.

For the reasons stated herein, Plaintiffs respectfully request that this Court grant their Motion to Exclude Michael Spodak, M.D., and preclude him from offering causation opinions at trial.

13

Respectfully submitted,

/s/ Katharine O. Porwick #16739
PAUL D. BEKMAN
KATHARINE O. PORWICK
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 West Pratt Street
Suite 450
Baltimore, Maryland  21201
(410) 539-6633

## REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on their Motion to Exclude Defense Expert Michael

Spodak, M.D.

/s/ Katharine O. Porwick #16739
KATHARINE O. PORWICK

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 3rd day of June, 2013, that copies of the aforegoing Plaintiffs'

Motion to Exclude Defense Expert Michael Spodak, M.D., Memorandum of Law in Support thereof,

and Proposed Order were sent via electronic transmission to:

Thomas V. McCarron, Esquire
Semmes, Bowen & Semmes
Suite 1400
25 South Charles Street
Baltimore, Maryland 21201
(410) 539-5040
*Attorney for Defendants*

/s/ Katharine O. Porwick #16739
KATHARINE O. PORWICK

14